JENNIE HARBISON, APPELLANT, v. JAMES W. TUFTS, APPELLEE.

1. MORTGAGE OF PERSONALTY RETAINING PRIVILEGE TO SELL.—A mortgage of personal property which provides that the mortgagor may retain possession of the property until maturity of the mortgage debt, with the right to use the property and to dispose of it in the ordinary methods and channels of trade, and without an ob-

ligation to account for the proceeds of sale, is, as against all but *bona fide* purchasers for a valuable consideration, void as to existing creditors of the mortgagor.

2. CHATTEL MORTGAGES AS BETWEEN THE PARTIES.—As between the parties to the transaction no particular form of instrument is requisite for the creation of a valid security on personal property. It may rest in parol, or be evidenced by a written instrument. A written pledge which does not contain the statutory provision for the retention of the property by the mortgagor is good against all but creditors and *bona fide* purchasers without notice. It is therefore good against one who purchases the property at a foreclosure sale under a subsequent invalid mortgage.

*Appeal from District Court of Las Animas County.*

Messrs. JOHN & MCKEOUGH, for appellant.

Mr. JESSE G. NORTHCUTT, for appellee.

BISSELL, J.   This is a controversy over a soda fountain to which the respective parties claim title. The cause was tried to the court upon an agreed statement of facts, from which it substantially appears,—that in March, 1889, Hosick & Company bought the fountain of Tufts for five hundred dollars, and delivered to him for the purchase price some twelve promissory notes for different sums, maturing at various periods between the first of May, 1889, and the first of October, 1890. According to the statement it was agreed between the parties at the time of the sale that the title should remain in Tufts to secure the purchase price until the maturity and satisfaction of the several notes. The agreement, which was in writing, was acknowledged by a member of the firm and recorded in the proper office of the county for the record of such instruments. The fountain subsequently passed into Hosick & Company's possession, and was set up in a drug store occupied by them for retail purposes. Within less than sixty days from the time of the purchase, Hosick, who had previously bought out his partner's interest in the concern, undertook to mortgage the property to Nelson T. and G. T. Clairborne. This mortgage

covered in terms the whole stock and fixtures of the store including the fountain. The mortgage provided that the mortgagor, until default, should keep, retain and use the property described in it. Afterwards the Clairbornes transferred the note to one Gross, who, on the maturity of the paper and default in its payment, took possession of the property, attempted to foreclose the mortgage, and in the proceedings sold the fountain to the appellant Jennie Harbison. To reverse the finding of the court adjudging the right of property to be in Tufts, the appellant prosecutes this appeal.

The court did not err in its judgment. The law which is decisive of the rights of the parties to this controversy has been settled by the previous adjudications of the supreme court. By the terms of the attempted contract of mortgage between the Clairbornes and Hosick, he had the right to use and enjoy the property and dispose of it in the ordinary methods and channels of trade, and he was under no obligations by the provisions of the agreement to account to the mortgagees for the proceeds of what might be sold. Such a mortgage has been adjudged invalid as to all existing creditors, who are permitted to assert its invalidity as against any but *bona fide* purchasers for a valuable consideration. As was well said by the learned justice of the supreme court who delivered the opinion which first established the law in the state, (9 Colo. *infra*,)—" when the mortgage stipulates, either in the mortgage or out of it, that the mortgagor may sell the very thing composing his security and retain the proceeds, he thereby destroys every vestige of a valid statutory or common-law mortgage, and leaves himself in no better position than if it had not been executed. Besides, the inevitable tendency of the transaction is disastrous to other creditors of the mortgagor; for the effect is to hinder and delay such creditors, while the mortgagor makes way with the property, and leaves the general aggregate of his indebtedness undiminished. Predicated upon these considerations is the view sustained, as we think, by the larger number and the better reasoned cases, viz., that the *existence* of the facts

mentioned, whether shown by the mortgage or by evidence *aliunde*, wholly invalidates the transaction as to creditors."

In the *Brasher case*, (10 Colo. *infra*,) the court by the learned commissioner, Mr. Macon, says,—" that the agreement to sell invalidates the mortgage as to creditors and encumbrancers, and this effect takes place at the moment of the delivery of the instrument. It is not necessary to this effect that any of the property be sold under the power. The transaction is vitiated *ab initio* as to all the property upon which it is attempted to create a lien, by the reservation of such right, and not by the exercise of it."

It is thus plain that it is the law of this state that a mortgage like that from which Mrs. Harbison derives her title is invalid as against creditors, and cannot prevail in a contest concerning the property. *Wilson v. Voight*, 9 Colo. 614; *Brasher v. Christophe*, 10 Colo. 284.

These cases likewise declare the law to be, that the security is unaided by the inclusion of property other than the merchandise subject to sale. The result is thus wholly unaffected by the character of the property in controversy.

But one other question remains to be determined to dispose of this appeal, and that is as to whether Mrs. Harbison can be regarded as a *bona fide* purchaser, so that her title will be protected as against the claim of Tufts under his security. It is contended that the instrument upon which Tufts relies is wholly informal and not in accord with the provisions of the statute concerning chattel mortgages, which requires that such instruments must contain an express provision permitting the mortgagor to retain possession of the property in order to render the instrument valid as against creditors if the mortgagor be found in possession. The circumstances of this case and the situation of Mrs. Harbison will not support this contention. It is the law as between parties to the transaction, that no particular form is requisite for the creation of a valid instrument for security upon personal property. It may rest in parol, or it may be evidenced by a written instrument. It may contain the statutory pro-

vision concerning the possession which will render it valid as against creditors, if in proper manner it reaches the record, or it may be without this provision and without a record and still be good as against everybody but creditors and *bona fide* purchasers without notice. In these principles all the authorities concur, and a citation would be useless. It therefore follows as between Hosick & Company and Tufts, the instrument upon which Tufts relied as the evidence of his title was valid and enforceable as against all but the excepted parties. This leaves the naked inquiry, whether Mrs. Harbison is by the transaction placed within the protection accorded to the excepted classes. It is evident from the preceding statement of the history of the case that she was neither a purchaser from Hosick, nor one of his creditors, when she acquired the title on which she relies. The mortgage which Gross attempted to enforce was void as against Tufts's claim, and he gained no advantage by reason of its seizure or sale, nor would it prevent Tufts or any other *bona fide* creditor from following the property and securing precedence in the payment of his debt. This principle is clearly settled by the two cases cited, and if possible is made more plain by the subsequent decision of *Gerow v. Castello*, 11 Colo. 560.

These considerations dispose of all the questions necessary to the settlement of the rights of these parties. Perceiving no substantial error in the record requiring a reversal of the case the judgment is affirmed.

*Affirmed.*